**TENNGASCO GAS GATHERING COMPANY, Appellant,**

v.

**Herman F. FISCHER, Appellee.**

No. 1934cv.

Court of Appeals of Texas, Corpus Christi.

Jan. 13, 1983.

Rehearing Denied March 10, 1983.

William H. Keys, Victor M. Carrera, Keys, Russell & Seaman, Corpus Christi, for appellant.

M.W. Meredith, Jr., Frank E. Weathered, Meredith & Donnell, Corpus Christi, E.B. Grimes, Robstown, for appellee.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is a pipeline condemnation suit, tried to a jury, in which judgment was entered in favor of appellee, Herman F. Fischer. Appellant, Tenngasco Gas Gathering Company, plaintiff below, brought this appeal and contends that they are entitled to a summary reversal and remand because through no fault of theirs, a complete statement of facts is not available. Appellant also questions the weight and the sufficiency of the evidence to support the jury's findings. On the other hand, through cross-points, appellee contends that appellant does not have the right to take the land in question because appellant is not using the land for a public purpose. We affirm.

### "INCOMPLETE" STATEMENT OF FACTS

In perfecting its appeal, appellant ran into considerable difficulty in obtaining a complete statement of facts. The court reporter suffered a nervous breakdown and did not prepare a statement of the testimony of appellant's expert witness, Mr. Richard Clower, concerning the value of the property in question, nor the rebuttal testimony of appellee's expert witnesses. The court reporter did not even make any notes of this testimony, so that there is nothing to transcribe.

This Court ordered the parties to prepare a narrative statement of Mr. Clower's testimony, *each* party to present its version to the other, with the trial court to resolve any discrepancies. Rule 377(e), Tex.R.Civ.P. (Vernon's Supp.1982). Attorneys for appellant did not prepare their version of the testimony but attorneys for appellee did submit a proposed narrative to the appel-

lant's attorney who proposed modifications to which appellee agreed. However, appellant's counsel refused to agree to the modified statement. A hearing was held in the trial court at which attorney's for appellee presented the proposed narrative (and modifications) of the missing testimony, referring to notes they had taken during the examination of the witnesses. Counsel for appellant stated that they were unable to locate their notes from the trial.

The trial court certified a narrative statement of Mr. Clower's testimony as proposed by counsel for appellee. In so doing, the trial court stated that his personal recollection of the events occurring during trial had been refreshed by the testimony given at the hearing. The trial court's order certifying the narrative statement includes the findings that there were no objections, rulings thereon, or bills of exception made during said testimony, *and* that the rebuttal testimony of appellee's expert witnesses was cumulative of their earlier testimony, a record of which is before this Court in the question and answer statement of facts.

Appellant contends it is entitled to a summary reversal and remand for new trial because a complete statement of facts in question and answer form if not available. Under the circumstances of this case however, we disagree.

■ When the complaint is made that the evidence is factually or legally insufficient to support vital findings of fact, the burden upon the party challenging such findings cannot be met in the absence of a complete or an agreed statement of facts. *Englander Co. v. Kennedy,* 428 S.W.2d 806, 807 (Tex.1968). Here we have a complete statement of facts for all intents and purposes. Appellant submits that it should not be compelled to accept the narrative statement that were certified by the trial court. He cites *O'Neal v. County of San Saba,* 594 S.W.2d 185 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.); *Goodin v. Geller,* 521 S.W.2d 158 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.); and *Waller v. O'Rear,* 472 S.W.2d 789 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e.).

In *Waller,* a new trial was granted when the appellant could not obtain any statement of facts because the court reporter lost his notes. The court rejected appellee's argument that appellant had not exercised due diligence to secure an agreed narrative or statement from the trial judge on the grounds that the case had been withdrawn from the jury and an instructed verdict entered for the appellee. The court expressed doubts about the abilities of the parties or the trial judge to make a statement sufficient for its review, in light of the evidentiary standard of review in directed verdict cases. 472 S.W.2d at 790–91. In the *Goodin* case, a statement prepared by the trial judge without any input from the parties was rejected by the Court of Civil Appeals which remanded the cause because the testimony of seven key witnesses was missing from the statement of facts. There was no mention of the length of time that had passed since the trial. In *O'Neal,* remand was granted following the court reporter's refusal to file the statement of facts, even after mandamus was issued and a contempt citation and fine ordered. The court there doubted the effectiveness of appellee's suggestion that after a lapse of more than 27 months, the trial court should have been asked to reconstruct the missing portion of the record.

■ A new trial should be granted only where it appears that no other action will adequately protect the right of the appellant to review by the Court of Appeals. *Wolters v. Wright,* 623 S.W.2d 301, 306 (Tex.1981). In our case, the narrative certified by the trial court protects the right of appellant to review of the testimony missing from the court reporter's notes. *The critical testimony in the narrative is that of appellant's own expert witness on land values. The record of the hearing on the narrative statement contains no evidence of any efforts by appellant to reconstruct the testimony or to recall their witness to verify the version proposed by appellees.* The trial court and appellee complied in good faith with this court's order to attempt to resolve the conflict with a suit-

able narrative. This solution seems particularly appropriate in a condemnation case, such as we have here, where the missing testimony concerns the damages to the land and the jury is free to accept or reject any or all of an expert's opinion, or blend the evidence received to determine the damages due for the taking. In the light of all the above facts, we hold that the court-certified narrative is sufficient to complete the statement of facts for appellant's protection and our review. Points of error one, two and three are overruled.

■ We now address appellant's objections to the testimony of appellee's expert witness on land values, John H. Reagan. Essentially, appellant contends that Reagan should not have been allowed to testify to his opinion as to the value of raw acreage because it was shown that in formulating that opinion he relied on sale prices of lots in neighboring subdivided lands. This issue has already been considered twice by this court and decided against appellant. *Tenngasco Gas Gathering Co. v. Fischer,* 624 S.W.2d 301, 304 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.) and, *Tenngasco Gas Gathering Co. v. Bates,* 645 S.W.2d 496 (Tex.App.—Corpus Christi, 1982). For the reasons given in those opinions, we hold that Reagan's testimony was admissible in our case. We overrule points of error twelve through fifteen.

Through its remaining points, appellant attacks the legal and factual sufficiency of the evidence to support the jury's findings on the values of the condemned property and the remainder of the appellee's tract before and after the taking. In considering the points we follow the well established standards set forth in *In Re Kings Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951) and *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965).

In answer to special issues no. 1 and 2, the jury found that the strip of appellee's land taken for the pipeline was worth $4,000.00 before the taking and was worth $1,000.00 after. In response to issues no. 5 and 6, the jury valued the remainder of appellee's property at $564,500.00 before the condemnation and $427,500.00 after.

Reagan, appellee's first and primary value witness, testified that the strip taken for easement was worth $5,300.00 before the taking and that the damage resulting from the condemnation amounted to $3,500.00. Richard Clower, the appellant's value witness appraised the easement strip at $3,474.00 before and $869.00 after the taking, resulting in a diminution of $2,605.00.

As for the remainder of the property, Reagan testified about two parcels. A 10 acre portion separated by railroad track from the easement in question and judged suitable for industrial use was appraised at $35,000.00 both before and after the taking. Reagan testified that the remaining 137 acres was best suited to residential development. He gave two estimates of the value of this portion of the acreage before the taking: $530,000.00 and $479,928.00. The only value Reagan offered for the 137 acres after the taking was $342,820.00. Clower also divided the remainder into two parcels for purposes of evaluation. He valued 33 acres at $264,084.00, and 114.12 acres at $342,360.00 for a total of $606,444.00, both before and after the taking. In Clower's opinion, the pipeline easement had no effect at all on the value of the remainder of appellee's land.

■ In condemnation cases, the jury may select from the testimony on the question of value and set the value at any amount between the highest and lowest expressed by the experts. *Central Power & Light Co. v. Martinez,* 493 S.W.2d 903, 908 (Tex.Civ.App.—Corpus Christi 1973, no writ). Thus, a jury may blend all the evidence admitted before it. *Texas Electric Service Co. v. Wheeler,* 550 S.W.2d 297, 301 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.); *Hester v. State,* 497 S.W.2d 501, 505 (Tex.Civ.App.—El Paso 1973, writ ref'd n.r.e.).

■ It was within the exclusive province of the jury to judge the credibility of the witnesses and to determine the weight to be given their testimony. *Johnson v. Buck,* 540 S.W.2d 393 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). After reviewing the entire record, we hold that

there is ample evidence of probative value to support the jury's findings. Accordingly, we overrule points of error four through eleven and sixteen through nineteen.

## CROSS–POINTS

By cross-points, appellee assigns error to the trial court's disregard of the jury's answer to special issue no. 7. It reads as follows:

### "SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that Tenngasco Gas Gathering Company, in its construction and use of the pipeline through the land of Herman F. Fischer, is devoting its private property to public use?

In connection with this issue, you are instructed that 'public use' means a use for the benefit of the general public as distinguished from any private individual or private business.?

Answer 'it is', or 'It is not'.

ANSWER: It is not"

Since the jury answered in the negative, appellee moved for judgment on the basis that appellant did not have a right of eminent domain and, therefore, should remove the pipeline and pay all damages for the unjustified condemnation proceeding. Appellant moved to disregard the jury's response because the question of what is a public use is a judicial question not a fact question and, therefore, the jury's answer was not material. Without a hearing or an express ruling on either motion, the trial court rendered the judgment for damages resulting from the condemnation from which Tenngasco perfected this appeal.

■ Because the whole judgment is before us, not appearing definitely severable, and the appellant has not limited the scope of its appeal, a separate appeal by appellee is not necessary. *Dallas Electric Supply Co. v. Branum Co.,* 143 Tex. 366, 185 S.W.2d 427 (Tex.1945); *Cameron & Willacy Counties Community Projects, Inc. v. Gonzalez,* 614 S.W.2d 585 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). Generally, an appel-late court may not consider cross-points unless the appellee has in some manner apprised the trial court of his dissatisfaction with the judgment. *West Texas Utilities Co. v. Irvin,* 161 Tex. 5, 336 S.W.2d 609 (Tex.1960); *Visage v. Marshall,* 632 S.W.2d 667 (Tex.App.—Tyler 1982, writ ref'd n.r.e.); *Westwood Ind. School Dist. v. Southern Clay Products,* 604 S.W.2d 511 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.); *Rutherford v. Holmes,* 599 S.W.2d 668 (Tex.Civ.App.—Austin 1980, writ dism'd); *Nat'l Farmer's Organization v. Smith,* 526 S.W.2d 759 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Appellate Procedure in Texas,* § 15.16 (2d ed. 1979).

■ In this case, from the beginning, appellee attacked appellant's right to condemn on the ground that the use was not a public one. The trial court's judgment necessarily implied an overruling of appellee's motion for judgment and a sustaining of appellant's motion to disregard special issue no. 7. It is clear the trial court acted with full awareness of the appellee's position. The Court of Appeals for the Fifth Judicial District has recently held that a motion to disregard a jury finding is sufficient predicate to support a "no evidence" point on appeal. *Whataburger, Inc. v. Rutherford,* 642 S.W.2d 30 (Tex.App.—Dallas, 1982). We find this situation analogous and hold that appellee's motion for judgment was sufficient to support his cross-points before this court.

■ Taking for a public purpose is the only justification for condemning private property. *Coastal States Gas Producing Co. v. Pate,* 158 Tex. 171, 309 S.W.2d 828, 833 (Tex.1958); *Marrs v. Railroad Commission,* 142 Tex. 293, 177 S.W.2d 941 (Tex.1944).

■ The question of whether a given set of facts constitutes a public or private use is one of law for the court to decide. *Dallas Cotton Mills v. Industrial Co.,* 296 S.W. 503, 505 (Tex.Comm'n App.1927, judgment adopted); *Dupuy v. City of Waco,* 396 S.W.2d 103 (Tex.1965); *Housing Authority of the City of Dallas v. Higginbotham,* 135 Tex. 158, 143 S.W.2d 79 (Tex.1940).

■ The record in this case does not contain any conflicting evidence about the circumstances surrounding the taking in question. It is undisputed that at the time condemnation proceedings were instituted, appellant had a contract with Corpus Christi Petrochemical Corporation (CCPC) to sell natural gas to CCPC temporarily and then to purchase synthetic gas from CCPC, once CCPC got its operation going. The transportation of the synthetic gas from CCPC to appellant's general supply was the stated purpose of the pipeline. It is likewise undisputed that, due to a plant process failure, CCPC was subsequently unable to produce gas for sale to appellant and after the pipeline had been built, another contract was entered calling for the sale of gas from appellant to CCPC. The pipeline has never been used for anything other than the transport of gas sold by appellant to CCPC. There was no factual dispute over the conditions surrounding the condemnation or the building of the pipeline for the jury to resolve. The court did not err in disregarding special issue no. 7.

■ The test for determining whether a given use is public is to see if there results to the public some definite right or use in the business or undertaking to which the property is devoted. *Coastal States Gas Producing Co. v. Pate, supra,* 309 S.W.2d at 833; *Davis v. City of Lubbock,* 160 Tex. 38, 326 S.W.2d 699, 705–06 (Tex.1959). Initially, this test sounds rather narrow and restrictive. However, Texas courts have made it clear that it is the character of the right which inures to the public, not the extent to which the right is exercised, that is important in evaluating enterprises which are involved in condemning private property. *Housing Authority of the City of Dallas v. Higginbotham, supra,* 143 S.W.2d at 84. *West v. Whitehead,* 238 S.W. 976 (Tex. Civ.App.—San Antonio 1922, writ ref'd). As the *Higginbotham* court quoted from *Whitehead:* "It is immaterial if the use is limited to the citizens of a local neighborhood, or that the number of citizens likely to avail themselves of it is inconsiderable, so long as it is open to all who choose to avail themselves of it. The mere fact that the

advantage of the use inures to a particular individual or enterprise, or group thereof, will not deprive it of its public character." 143 S.W.2d at 84.

■ Further, the legislative declaration that a use is public and the delegation of power of eminent domain is to be given great weight by the court in reviewing a complaint that a particular use, sanctioned by the legislature is, in fact, private. *Davis v. City of Lubbock, supra,* 326 S.W.2d at 704; *Housing Authority v. Higginbotham, supra,* 143 S.W.2d at 84; *West v. Whitehead, supra.* Such declaration is binding on the court unless it is manifestly wrong or unreasonable, or the purpose for which the declaration is enacted is "clearly and probably private." *West v. Whitehead, supra,* at 978; See also *Davis v. City of Lubbock, supra; Housing Authority v. Higginbotham, supra; Comment, Public Use as a Limitation on the Power of Eminent Domain in Texas,* 44 Tex.L.Rev. 1499, 1502–03 (1966).

■ Of course, legislative grants of the power of condemnation are strictly construed in favor of condemnees and against condemnors. *Coastal States Gas Producing Co. v. Pate, supra,* 309 S.W.2d at 831. As the Supreme Court explained in *Pate:*

"Strict construction is not, however, the exact converse of liberal construction, for it does not require that the words of a statute be given the narrowest meaning of which they are susceptible. The language used by the legislature may be accorded a full meaning that will carry out its manifest purpose and intention in enacting the statute, but the operation of the law will then be confined to cases which plainly fall within its terms as well as its spirit and purpose. (Citations omitted)

■ Tex.Rev.Civ.Stat.Ann. art. 1435 (Vernon 1980) provides, in pertinent part: "Gas ... corporations shall have power to ... make and manufacture, transport and sell gas ... to individuals, the public and municipalities for light, heat, power

and other purposes, ... to construct, maintain and operate ... such machinery, apparatus, pipes, poles, wires, devices and arrangements as may be necessary to operate such lines at and between different points in this State; to own, hold and use such lands, right of way, easements, franchises, buildings and structures as may be necessary for the purpose of such corporation."

Article 1436 provides:

"Such corporation shall have the right and power to enter upon, condemn and appropriate the lands, right-of-way, easements and property of any person or corporation ..." Acts 1911, p. 228. Amended by Acts 1967, 60th Leg., p. 730, ch. 306 § 1, eff. Aug. 28, 1967.

These articles delegate to corporations like appellant, the right to determine the location and amount of lands they need to carry out in good faith the business they are chartered to carry on. *Arcola Sugar Mills Co. v. Houston Lighting & Power Co.*, 153 S.W.2d 628, 633 (Tex.Civ.App.—Galveston 1941, writ ref'd w.o.m.). That this business includes the transportation and sale of gas to individuals is beyond dispute. That "individuals" includes corporations like CCPC is clear from the language of Article 1438 which forbids power corporations like appellant from discriminating against "any person, corporation, firm, association or place" in charge or service.

■ We are not convinced that the purpose for which the legislature enacted Articles 1435 and 1436 is "clearly or probably private," or that the legislation is "manifestly wrong or unreasonable." We also cannot say that either the original proposed use or the present use of the pipeline here in question is not an authorized one under the statute. Therefore, we conclude the trial court did not err in rendering its judgment based on the implied holding that the use is public. Appellee's cross-points are overruled.

The judgment of the trial court is affirmed.

## OPINION ON MOTION FOR REHEARING

■ On motion for rehearing, Tenngasco contends that we erred in stating that the *only* rebuttal testimony that was missing was that of Fischer's witnesses. Our opinion doesn't say that but is open to that interpretation. Also missing from the statement of facts is the rebuttal testimony of Tenngasco's witness Steven Kennedy in addition to any objections and rulings relating to the testimony of these three witnesses (Clower, Reagan and Kennedy) and any bills of exception thereon and final arguments of counsel.

Kennedy's testimony in no way related to the issue of value and hence is not related to any issue on appeal. The reason the objections and rulings and bills of exception to these three witnesses is missing is because none were made. Finally, since no point on appeal relates to jury argument, the fact that they were not transcribed is irrelevant to this appeal.

For these reasons, we adhere to our original disposition and overrule both appellant's and appellee's motions for rehearing.